

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| SHASTA PARTEE, *on behalf of herself and all other occupants*, | § § | |
| Plaintiff, | § § | |
| vs. | § | Civil Action No.: 3:23-4777-MGL |
| | § | |
| POWERS PROPERTIES, | § § | |
| Defendant. | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Shasta Partee (Partee), on behalf of herself and all other occupants of Briar Grove Apartments (BGA), brings this civil action against Defendant Powers Properties (Powers), BGA's property manager.  Because Partee is a self-represented litigant, however, she is unable to represent others in federal court.  *Murray ex rel. Purnell v. City of Phila.*, 901 F.3d 169, 170 (3d Cir. 2018).

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting the Court grant Powers's motion for summary judgment.  The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Report contains a comprehensive recitation of the facts, which the Court finds unnecessary to repeat in full here.  Nonetheless, for context, the Court will briefly summarize the relevant factual and procedural history.

On July 31, 2021, Partee executed a one-year lease with Powers for an apartment at BGA in Columbia, South Carolina.  After the lease lapsed, Partee's rental became month-to-month.

Partee's adult son, Naeem, lived with her at BGA.  Partee contends Naeem is disabled, as he suffers from attention-deficit/hyperactivity disorder (ADHD), emotional dysregulation, bipolar disorder, oppositional defiant disorder, low dopamine, and other emotional disorders.

On September 28, 2022, Powers placed a letter of non-renewal on Partee's door, stating it was exercising its option to not renew Partee's lease and advising Partee to vacate the property by October 31, 2022.

Partee alleges Powers subsequently informed her the non-renewal was due to Naeem "being loud, . . . ma[king] a suicide attempt, and [making a] 'direct threat' amongst other alleged violations."  Amended Complaint ¶ 12.

On October 6, 2022, Partee emailed Powers:

> I was told that you are ending my tenancy due to my son being loud, arguing, disturbing tenants and tenant complaints.  I can understand my son can be a handful, but . . . I have explained to you all before that he has a mental condition.  He has ADHD and Explosive Disorder.  After a death in the family [of] someone really close[,] it became worse. . . . I will be contacting Fair Housing or [a] housing division to report this.  I want a reasonable accommodation for my son to be seen by his medical provider.

Partee's Supplemental Response to Powers's Motion for Summary Judgment at Ex. W.

Partee evidently visited Powers's office in Florence, South Carolina, on October 10, 2022.  Two days later, Partee alleges, Powers filed a false eviction action against her in the Dentsville Magistrate's Court for non-payment of rent.

2

On October 16, 2022, Partee emailed Powers:

> As stated previously to the security guard of [BGA Rick Tallent (Tallent)] during a psychotic episode[,] my son has a documented mental illness of ADHD . . . and Explosive Disorder . . . .   Both of these conditions cause loud outburst[s], anger, aggression, emotional imbalances, impulse control, and inability to control behavior etc. unless properly medicated.  In February[,] my son experienced a death . . . . and it caused the mental illness to get worse.  Unbeknownst to me[,] he stopped taking his medication. . . . I have asked orally if we could receive special accommodations in order to remedy this situation, but [I] was refused by the Florence office.  I am once again asking in writing for special accommodations [versus] moving to remedy this situation.

*Id.*  Partee states she attempted to provide Powers with supporting medical documentation, but Powers neither reviewed nor accepted the materials.  So, Partee filed a complaint with the South Carolina Human Affairs Commission (SCHAC).

In response to Partee's SCHAC complaint, Powers stated it was "unaware of [Naeem's] disability . . . prior to the letter for non-renewal given on [September 28, 2022]."  *Id.* at Ex. J.  Powers further informed SCHAC,

> We are concerned for the safety of all our residents based on the actions of [Naeem].  Between [June 23, 2022, and October 14, 2022, Naeem] has been involved with the police [six] times.  He has been caught by police pointing and presenting a realistic firearm at vehicles [and] pedestrians.  Management witnessed him jumping off a [third] floor balcony from the apartment where he resides.  There were [two] incidents of [b]reach of [p]eace in one day.  In addition, there are [two] open arson investigations, with a video of evidence for one of the events, of [Naeem], along with [two] other male accomplices[,] attempting to set the ceiling in the breezeway and vinyl siding of our building on fire.

*Id.*

Partee alleges, between July 2023 and when she moved out in July 2024, Powers retaliated against her by neglecting her apartment upkeep, mocking her maintenance concerns, charging her for repairs, ignoring emergencies, and causing her to lose food.  The record is unclear, however, as to why Partee remained at BGA until July 2024.

3

Based on the foregoing allegations, Partee filed this lawsuit. She asserts claims for failure to accommodate and retaliation under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq., as well as claims for breach of contract, constructive eviction, and intentional infliction of emotional distress (IIED).

The Magistrate Judge filed the Report on August 14, 2025. The Court granted in part Partee's motion for an extension of time, and she filed objections on September 16, 2025. Powers failed to reply. The Court has carefully reviewed Partee's objections but holds them to be without merit. It will therefore enter judgment accordingly.

## III.     STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether the Magistrate Judge erred in recommending the Court grant summary judgment as to Partee's failure-to-accommodate claim*

"[T]o prove a failure-to-accommodate claim, a plaintiff must show (1) that the plaintiff or a person who would live with the plaintiff had a handicap within the meaning of [the FHA]; (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use

4

and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).

Partee first maintains the Magistrate Judge inappropriately disregarded the fact that accommodations may be requested at any time before eviction. The Court, however, is unconvinced.

Partee alleges she advised Tallent of Naeem's disabilities before Powers issued the notice of non-renewal. But, the record reflects Tallent is employed by a third-party security contractor, rather than Powers. Thus, Partee has neglected to establish Powers "knew or reasonably should have been expected to know of" Naeem's disability when it issued the notice. *Id.*

After Partee informed Powers of Naeem's disability, she submitted additional requests for accommodation. As the Magistrate Judge noted, though, these requests "indicated circumstances unrelated to [Naeem]'s mental impairments"—more specifically, the death of a family member—"were contributing to [his] alleged disruptive behavior . . . ." Report at 14. And, the requests neither specified "what accommodation [Partee] sought beyond not having to move, or having more time to move[] nor . . . identif[ied] . . . how such accommodation[] would directly ameliorate the effect of [Naeem]'s mental impairments." Report at 16; *see Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir. 1997) ("[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'").

For all these reasons, the Court is unable to conclude "the accommodation was likely necessary to afford [Naeem] an equal opportunity to use and enjoy the dwelling[.]" *Olsen*, 759 F.3d at 156. Accordingly, the Court will overrule this objection.

Partee next challenges the Magistrate Judge's alternative conclusion Powers was entitled to reject Naeem's tenancy because it "would constitute a direct threat to the health or safety of other individuals or . . . would result in substantial physical damage to the property of others." Report at 16 (relying on the direct threat exception to the FHA). Partee contends the Magistrate Judge, in making this determination, erroneously weighed disputed facts and mischaracterized her allegations.

As the Magistrate Judge explained, the relevant statute provides, "[n]othing in [the FHA] requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9). Therefore, "the potential for personal injury is a relevant consideration in examining whether a modification or accommodation request was reasonable." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272–73 (4th Cir. 2013).

Here, Partee testified Naeem underwent a mental health crisis on June 23, 2022, during which he "went into a rage, said that he wanted to kill himself," and "jumped from [a third floor] balcony" at BGA. Partee's Deposition at 30. That same day, Tallent submitted an incident report stating Naeem was "pointing [what appeared to be an AR-type rifle] at people" and "moving in a tactical manner." Tallent's Incident Report. Although the rifle "turned out [to] be a highly realistic BB gun with working switches and a removable magazine[,]" Tallent noted Naeem "drew the attention of two [females] in the parking lot who seemed alarmed by his behavior." *Id.*

Two additional incident reports from the Columbia Police Department (CPD) reflect similar safety concerns. On October 10, 2022, CPD documented allegations, which were corroborated by video footage, of Naeem "willfully and maliciously burn[ing] the ceiling plastic

6

to the building outside [his apartment] causing damage" and "attempt[ing] to burn the wall next to the front door where he resides."  CPD's October 10, 2022 Incident Report.  Then, on October 13, 2022, CPD reported Naeem "used some type of devi[c]e to burn the siding of [his] apartment building[,]" and the damage was photographed.  CPD's October 13, 2022 Incident Report.

Given the foregoing evidence, the Court agrees with the Magistrate Judge Powers has shown its "conduct was supported by . . . objective evidence that [Naeem] posed a direct threat to persons or property, as is required to trigger the [direct threat] exception" to the FHA.  Report at 18.  The Court will thus also overrule this objection.

Finally, Partee posits the Magistrate Judge improperly disregarded *Bhogaita v. Altamonte Heights Condominium Association, Inc.*, 765 F.3d 1277 (11th Cir. 2014), which she contends recognizes a defendant's failure to engage in an interactive process as evidence of discrimination.

The Fourth Circuit has yet to address whether the FHA adopts an informal interactive process requirement.  The circuit courts that have addressed it, however, have held the FHA lacks any such requirement.  *See, e.g.*, *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 446 (3d Cir. 2002) (declining to extend the interactive process requirement of the Americans with Disabilities Act (ADA) to the FHA because "[t]he informal interactive process that [the ADA's implementing regulation] describes applies specifically to an employer-employee relationship"); *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1047 (6th Cir. 2001) (explaining, "while some courts have imposed an obligation on employers and employees to engage in an interactive process, there is no such language in the [FHA] or in the relevant sections of the Department of Housing and Urban Development's implementing regulations that would impose such a duty on landlords and tenants").  And, absent contrary guidance from the Fourth Circuit, the Court declines to implement this obligation.

7

The Court will therefore overrule this objection, as well.

**B.** ***Whether the Magistrate Judge erred in recommending the Court grant summary judgment as to Partee's retaliation claim***

To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protected activity, (2) the defendant was aware of the activity, (3) the defendant took adverse action against her, and (4) the adverse action was causally connected to the protected activity. *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003).

Partee reiterates her argument the "immediate temporal proximity" between her email to Powers on October 6, 2022 and the false eviction action filed by Powers on October 12, 2022, "establishes a strong causal connection between the protected activity and the retaliatory action." Partee's Objections at 10.  But, as the Magistrate Judge explained, Powers "has provided a legitimate, nondiscriminatory reason[] for its actions, and [Partee] has failed to offer any evidence or argument that the reasons offered were pretext for illegal retaliation."  Report at 23.  She is thus unable to establish a retaliation claim as to the alleged false eviction action, and the Court will overrule this objection.

Partee further contends the Magistrate Judge improperly rejected as too remote Powers's purported retaliatory actions after July 2023.  Partee maintains such actions "were part of a continuing retaliatory campaign, and whether they would dissuade a reasonable person from exercising FHA rights is a factual question for a jury."  Partee's Objections at 10.

The Court, however, agrees with the Magistrate Judge a nine-month lapse between the alleged protected activities in October 2022 and the purported retaliatory actions beginning in July 2023 neglects to establish a sufficient causal connection. *See, e.g.*, *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) (affirming the district court's granting of summary judgment and noting "[a] six month lag is sufficient to negate any inference of causation"); *Conner v. Schnuck*

*Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (affirming the district court's granting of summary judgment and observing "the four month time lag between [the plaintiff]'s participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation"). Accordingly, the Court will overrule this objection, too.

### C.     Whether the Magistrate Judge erred in recommending the Court grant summary judgment as to Partee's breach of contract claim

Partee also contends the Magistrate Judge disregarded Powers's duty of habitability. *See* S.C. Code Ann. § 27-40-440 (requiring a landlord to maintain a habitable premise). Partee claims she "presented evidence of [Powers's] failure to inspect smoke detectors, fire extinguishers, sprinkler system, and electrical safety." Partee's Objections at 11. But, she neglects to identify any such evidence. And, upon review of the record, it appears there is a complete lack of evidence as to the smoke detectors, sprinkler system, and electrical safety and insufficient evidence as to the fire extinguishers. So, the Court will overrule this objection.

Moreover, Partee asserts the Magistrate Judge ignored Powers's statutory obligation to provide her a fourteen-day notice to cure. *See* S.C. Code Ann. § 27-40-710(A) (allowing a landlord to terminate a lease where a tenant neglects to remedy her breach within fourteen days of notice). The relevant statute, however, applies when a landlord seeks to remedy a tenant's breach of her lease. And, here, as the Magistrate Judge explained, Powers "did not issue a notice of eviction or breach of the lease agreement to [Partee]; it instead issued a notice [of non-renewal] at the end of her lease term and in accordance with the lease." Report at 25; *see* Partee's Deposition at 39 (Partee agreeing that a notice of non-renewal is not an eviction). Consequently, the Court will overrule this objection, as well.

9

  **D.**  *Whether the Magistrate Judge erred in recommending the Court grant summary judgment as to Partee's constructive eviction claim*

  Partee avers "[w]hether [her] eventual departure in [July] 2024 was within a 'reasonable time' given the conditions is a jury question." Partee's Objections at 12; *see Thomas v. Hancock*, 246 S.E.2d 604, 605 (S.C. 1978) ("Constructive eviction results from an intentional act or omission of the landlord . . . that deprives the tenant of possession or substantially interferes with h[er] beneficial use or enjoyment of the leased premises or a substantial part thereof, followed by the tenant's abandonment within a reasonable time.").

  Like the Magistrate Judge, the Court is persuaded the twenty-one-month delay between Powers issuing the notice of non-renewal and Partee moving out of BGA fails to constitute "abandonment within a reasonable time." *Thomas*, 246 S.E.2d at 605. In other words, "the record taken as a whole could not lead a rational trier of fact to find" in favor of Partee on her claim for constructive eviction. *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)). Accordingly, the Court will overrule this objection.

  **E.**  *Whether the Magistrate Judge erred in recommending the Court grant summary judgment as to Partee's IIED claim*

  Finally, Partee maintains "a jury could reasonably find [Powers's] conduct . . . sufficiently outrageous to sustain liability." Partee's Objections at 12; *see Hamer v. Am. Med. Int'l, Inc.*, 465 S.E.2d 112, 117 (S.C. Ct. App. 1995) (explaining an IIED claim consists of four elements, the second of which is whether "the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious[] and utterly intolerable in a civilized community").

  The Court, however, agrees with the Magistrate Judge "Partee has failed to offer evidence that [Powers's] conduct was so extreme and outrageous as to exceed all possible bounds of decency

10

and must be regarded as atrocious[] and utterly intolerable in a civilized community." Report at 27–28 (internal quotation marks omitted). And, it is the role of the Court, rather than a jury, to make such a determination. *Hamer*, 465 S.E.2d at 117 ("[T]he trial court determines whether the defendant's conduct was extreme and outrageous enough to permit recovery."). The Court will thus overrule this objection.

## V.     CONCLUSION

After a thorough review of the Report and the record in this case under the standard set forth above, the Court overrules Partee's objections, adopts the Report, and incorporates it herein. It is therefore the judgment of the Court Powers's motion for summary judgment is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed this 4th day of February 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE


*****
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of their right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.